IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03078-RM-BNB

DARLENE GRIFFITH,

Plaintiff,

v.

CARMEN A MEYER, N.P.,
PAULA FRANTZ, chief medical officer,
LOUIS CABILING, M.D.,
JUDY BRIZENDINE, H.S.A.,
DIANE TORRES, N.P.,
THOMAS L. PULK, M.D.,
HOPE C. BEATTE, PHD,
STEVEN GALLEGOS, P.A.
SUSAN TIONA, M.D.,
ROY HAVENS, P.A.,
ERICA WILSON, pharmacist,

Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the following motions:

1. **Colorado Department of Corrections Defendants' Motion to Dismiss Plaintiff's Amended Complaint** [Doc. #72, filed 11/07/2012] brought by defendants Meyer, Torres, and Frantz;

2. **Motion to Dismiss Second Amended Complaint From Defendants Cabiling and Brizendine** [Doc. #75, filed 11/26/2012];

3. **Motion to Dismiss From Defendant Roy Havens** [Doc. #101, filed 03/06/2013];

4. **Colorado Department of Corrections Defendants Motion to Dismiss Plaintiff's Amended Complaint** [Doc. #109, filed 04/22/2013] brought by defendants Pulk, Beatte, Tiona, and Wilson; and

5. The plaintiff's **Request for Entry of Default Judgement** [Doc. #117, filed 05/20/2013].

I respectfully RECOMMEND that the defendants' motions to dismiss be GRANTED and that the plaintiff's motion for default judgment be DENIED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is a transgendered inmate currently incarcerated by the Colorado Department of Corrections ("DOC").  She filed her Second Amended Prisoner Complaint on November 7, 2012 [Doc. #71] (the "Complaint") asserting one claim for violation of the Eighth Amendment based on the defendants' alleged discontinuation of her hormone replacement therapy.  The Complaint contains the following allegations:

1.  The plaintiff entered the DOC on April 25, 2011.  She was on hormone treatment consisting of Premarin, 2.5 mg; Medroxyprogesterone, 2 ml; and Delestrogen, .3 ml.  The plaintiff advised the defendants that she was taking the hormones for Gender Identity Disorder ("GID") and that discontinuing the treatment would cause her physical and mental harm.  *Complaint*, p. 7.

2.  Defendant Carmen Meyer, Nurse Practitioner, stopped all of the plaintiff's medications.  Id. at pp. 3, 7.

3.  The plaintiff filed grievances stating that she was in serious pain, her breasts ached, she was lactating, and she had migraines and blurred vision.  These are all side effects of discontinuing the medications she had been taking for 12 years.  Id. at p. 7.

4.  The plaintiff was seen by defendant Louis Cabiling, M.D., on June 1, 2011.  She advised Dr. Cabiling that she was lactating and suffered from severe headaches, bone aches, muscle aches, and blurred vision.  Dr. Cabiling would not "put in the paperwork" for the plaintiff's non-formulary medications.  He stated that he was awaiting the decision of the DOC's GID Committee on June 3, 2011.  Id.

5. The plaintiff saw defendant Judy Brizendine, Health Services Administrator and Nurse Practitioner. She asked if Brizendine could help get her medications reissued. Brizendine stated that she would not help. Id. at p. 8.

6. On June 13, 2011, the plaintiff received a response to her grievance which stated that defendant Paula Frantz, Chief Medical Officer, agreed to stop the medications. Id.

7. The plaintiff was supposed to meet with the GID Committee in June 2011. The plaintiff never met with the committee. Id. The plaintiff submitted medical kites and letters regarding her symptoms and her inability to meet with the GID Committee. She received a response stating that her issues were serious, would be investigated, and would be addressed. Id. at pp. 8-9.

8. On September 22, 2011, Physician Assistant Danny Englund ordered Premarin 2.5 mg. and Depo-Provera (Medroxyprogesterone), 2 ml., for the plaintiff. On September 27, 2011, defendant Diane Torres, Nurse Practitioner, stopped the Medroxyprogesterone. On October 13, 2011, defendant Thomas Pulk, M.D., refused to reissue the Medroxyprogesterone. Id. at p. 9.

9. On November 21, 2011, the plaintiff was seen by defendant Steven Gallegos, Physician Assistant. Gallegos refused to reissue the Medroxyprogesterone. Id.

10. The plaintiff received a response from James Michaud, the Mental Health Program Administrator, on December 1, 2011. Dr. Michaud stated that "medication decisions are the responsibility of the medical professionals. However, offenders who request hormonal treatment for GID get evaluated by Dr. Hope C. Beatte." The plaintiff spoke with defendant Beatte on October 26, 2011, but she would not discuss medication issues with the plaintiff. Id.

11. On December 8, 2011, Dr. Timothy Creany re-ordered Premarin, 2.5 mg, and Delestrogen, .3 ml, but not the Depo-Provera (Medroxyprogesterone) injections. Id. at p. 10.

12. On December 14, 2011, the plaintiff received a response to her last grievance which states that hormone injections were ordered on December 8, 2011. Id.

13. On April 24, 2012, defendant Susan Tiona, M.D., ordered Depo-Provera. Dr. Tiona stated that the DOC pharmacy would not fill the prescription. Id.

14. On June 21, 2012, defendant Roy Havens, Physician Assistant, re-ordered the Depo-Provera. Defendant Erica Wilson, Pharmacist, "stopped this order, asking question, 'please explain use of this medication.'" Id.

15. On August 23, 2012, Havens tried to re-order Depo-Provera, but Dr. Tiona, Dr. Frantz, and Erica Wilson all "stopped [the] order." Id.

16. The plaintiff suffered severe bruising. She told all doctors and physician assistants about her bruising. Defendants Tiona, Havens, Cabiling, Gallegos, and Pulk all knew about the bruising and have "done nothing to try to fix it." Id.

The plaintiff brings one claim for deliberate indifference to her serious medical needs in violation of the Eighth Amendment. She seeks injunctive and declaratory relief. She also seeks one million dollars in damages from each defendant. Id. at p. 14. The defendants argue that the plaintiff fails to state a claim for violation of the Eighth Amendment.

## III. ANALYSIS

### A. The Defendants' Motions to Dismiss

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The

subjective component is a middle ground that lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. at 836.

To survive a motion to dismiss, a plaintiff must allege (1) a sufficiently serious medical need and (2) a sufficiently culpable state of mind. Riddle v. Mondragon, 83 F.3d 1197, 1205-06 (10th Cir. 1996). Conclusory allegations, without supporting factual averments, are insufficient to state a claim for violation of the Eighth Amendment. Id. at 1205.

The Tenth Circuit Court of Appeals has held that the Eighth Amendment requires that some treatment must be provided to an inmate suffering from mental or physical problems resulting from GID. Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995) (recognizing Phillips v. Michigan Dept. of Corrections, 731 F.Supp. 792 (W.D.Mich. 1990), where the court issued a preliminary injunction ordering prison officials to provide estrogen treatment to a preoperative transsexual inmate who had taken estrogen before entering prison, but had not been provided treatment of any kind after entering the prison); Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986) (finding that the DOC "made an informed judgment as to the appropriate form of treatment and did not deliberately ignore the plaintiff's medical needs" when it provided the inmate with testosterone replacement therapy and mental health treatment instead of estrogen treatment). The Eighth Amendment does not, however, entitle a transgendered inmate to any particular type of treatment, nor does it require that prison officials provide a transgendered inmate with exactly the same care she was receiving pre-incarceration. Id.; Fields v. Smith, 712 F.Supp.2d 830, 856-62 (reviewing cases containing claims brought by prisoners with GID issues).

It appears from the allegations of the Complaint that the plaintiff was not provided any treatment from the time she entered the DOC on April 25, 2011, until Physician Assistant Danny Englund ordered Premarin and Depo-Provera (Medroxyprogesterone) on September 22, 2011. However, in her responses to the defendants' motions, the plaintiff concedes that when defendant Meyer stopped her pre-incarceration medications, the plaintiff was prescribed a low dose of Estrogen. *Plaintiff's Response to Defendants' Motion to Dismiss Second Amended Complaint* [Doc. #106], pp. 1, 6; *Plaintiff's Second Response to Defendants' Motion to Dismiss Second Amended Complaint* [Doc. #116], p. 1. Therefore, the plaintiff was not denied treatment for her GID when she entered the DOC; she was given Estrogen immediately upon her entry into the DOC and has been provided with some form of hormone therapy throughout her incarceration.

The plaintiff complains that the Estrogen and all subsequent hormones prescribed by prison health care providers are inadequate to address her physical and mental health needs.[1] Her complaints are, at best, complaints of medical malpractice; they are not sufficient to allege that any of the named defendants were deliberately indifferent. To the contrary, the plaintiff's allegations demonstrate that she received Estrogen immediately upon entry into the DOC; she was seen numerous times by various health care providers; and she was subsequently prescribed

---

[1]The plaintiff complains that she "has not received any mental health treatment for GID" and that "as recently as May 3, 2013, the Plaintiff was advised by both of her Mental Health Providers that they were not qualified to give the Plaintiff treatment in the area of GID." *Plaintiff's Second Response to Defendants' Motion to Dismiss Second Amended Complaint* [Doc. #116], pp. 4-5 (emphasis in original); *Plaintiff's Response to Defendants' Motion to Dismiss Second Amended Complaint* [Doc. #106], p. 10. However, the plaintiff does not allege any specific facts to show that she actually suffered from a mental health disorder. To the contrary, the only specific factual allegations are of physical symptoms; the allegations regarding mental injury are vague and conclusory. Moreover, the plaintiff does not allege that any of the named defendants were aware that she suffered from a specific mental health issue and deliberately denied her treatment for the issue.

additional hormone therapy in addition to the Estrogen.  To the extent the plaintiff believes that more should have been done or things should have been done differently, "a prisoner who merely disagrees with . . . a prescribed course of treatment does not state a constitutional violation."  Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).  As the Court stated in Estelle v. Gamble:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

429 U.S. 97, 106 (1976).

The defendants' motions to dismiss should be granted, and the Complaint should be dismissed in its entirety.

### B.  The Plaintiff's Motion for Default Judgment

The plaintiff seeks an entry of default and a default judgment against defendant Steven Gallegos. On February 12, 2013, I ordered the United States Marshal to serve Gallegos and others and, if appropriate, to first attempt to obtain a waive of service [Doc. #91].  Although the DOC Office of Legal Services waived service for several defendants, it did not waive service for defendant Gallegos because he is no longer an employee of the DOC [Doc. #93].  No forwarding address was provided for Gallegos, and no further attempt to serve him has been made.

Until a defendant is properly served, a defendant has no duty to answer or otherwise respond to a complaint.  See Fed.R.Civ.P. 12(a)(1)(A) (defendant must serve answer "within 20 days after being served with the summons and complaint").  Because Gallegos has no duty to

plead until he is properly served, entry of default and default judgment against him is improper. See Fed.R.Civ.P. 55(a) (clerk shall enter default when party against whom judgment is sought has failed to plead). Moreover, because I find that the plaintiff has failed to state a claim upon which relief can be granted as to any of the defendants, the claim against Gallegos should be dismissed.

## IV.  CONCLUSION

I respectfully RECOMMEND:[2]

1.  The Colorado Department of Corrections Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. #72] be GRANTED;

2.  The Motion to Dismiss Second Amended Complaint From Defendants Cabiling and Brizendine [Doc. #75] be GRANTED;

3.  The Motion to Dismiss From Defendant Roy Havens [Doc. #101] be GRANTED;

4.  The Colorado Department of Corrections Defendants Motion to Dismiss Plaintiff's Amended Complaint [Doc. #109] be GRANTED;

5.  The plaintiff's Request for Entry of Default Judgement [Doc. #117] be DENIED; and

6.   The Complaint be DISMISSED as against all defendants.

---

[2]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 22, 2013.

                                          BY THE COURT:

                                          s/ Boyd N. Boland
                                          United States Magistrate Judge